IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CR-10 |
| | ) | (JORDAN/GUYTON) |
| CHRISTOPHER ALLEN CURRY, | ) | |
| MICHAEL VINCENT BOYD, and | ) | |
| JOVAN MENDIZABAL, | ) | |
| | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION

This matter comes before the Court upon the defendant, Jovan Mendizabal's Motion For A Kastigar Hearing, Or In The Alternative, To Dismiss The Indictment [Doc. 33]. The government filed a response to the Motion [Doc. 38] and a supplemental response [Doc. 39]. The parties came before the Court for a hearing on the motion on June 10, 2005. The government was represented by Assistant United States Attorney W. Brownlow Marsh and the defendant, Jovan Mendizabal ("Mendizabal"), was represented by Assistant Federal Defender Jonathan Moffatt. The defendant was also present.

Defendant's motion asks for a Kastigar hearing to determine the admissibility of all evidence except that in possession of the government prior to October 19, 2004. The defendant argues that the Court should determine whether statements made by Mendizabal under a grant of use immunity were subsequently used by the government in violation of a proffer agreement. See Kastigar v. United States, 406 U.S. 441 (1972). Alternatively, the movant argues that the indictment should be dismissed because statements made by the defendant under a grant of use immunity may have been used in the investigation and presentation of this case to the grand jury and may be used at trial.

The government counters that the defendant Mendizabal made statements after his arrest and before he made the proffer. The government's position is that the pre-proffer statements, along with permissible derivative use of defendant's proffer, could properly form a basis for obtaining the indictment. Therefore, the government argues that the defendant is not entitled to a <u>Kastigar</u> hearing or dismissal of the indictment.

## I. FACTS

Although there was no testimony given with regard to the <u>Kastigar</u> issue, the following facts are derived from the June 10, 2005 testimony on the suppression motion and documents in the record, including exhibits the parties have attached to their briefs. The defendant was arrested by DEA Agent Mike Long on October 14, 2004, following a controlled purchase of cocaine at Knoxville Center Mall. Following the defendant's arrest, DEA agents searched his home at 822 Corum Road, Knoxville, pursuant to a search warrant. Around 5:15 p.m., on October 14, 2004, the defendant was interviewed by Agent Long and another officer. [Doc. 38, Ex. 1] Agent Long's notes from that interview, contained in a Report of Investigation [Doc. 38, Ex. 1], relate that the defendant stated he had ten customers and sold cocaine in four and one-half ounce quantities or less. He identified one customer to whom he began selling cocaine in May or June 2004 and who owed him $5500 for fronted cocaine. He also stated that he was owed approximately $20,000 by various people for cocaine.

Also, according to Long's notes on the October 14 statement, the defendant identified his source of supply for cocaine as Chris Curry. He said he was introduced to Curry through Mike Boyd and began buying cocaine from Curry in July 2004. The defendant said when he needed cocaine,

2

he would contact Curry on Curry's cellular telephone, request an amount, and arrange a delivery date. He said he purchased one kilogram of cocaine every week or two weeks. The defendant stated that Curry would travel to Knoxville, rent a hotel room typically at the Baymont Inn or Hampton Inn off I-40 at exit 398, and then contact him. The defendant said he would then meet Curry and Boyd at the hotel room and purchase the cocaine.

On October 15, 2004, a criminal complaint was filed in case number 3:04-MJ-1069, alleging that from March 2004 to October 14, 2004, the defendant had conspired to distribute or possess with intent to distribute 500 grams or more of cocaine. The affidavit of Agent Long, which is attached to the complaint, states that the defendant had attempted to sell 253.5 grams of cocaine to a confidential source at the time of his arrest. The defendant had an initial appearance on October 15, 2004, at which Assistant Federal Defender Jonathan Moffatt was appointed to represent him.

On October 18, 2004, the government sent defense counsel a letter, which confirmed that the defendant had agreed to provide a proffer and set forth the ground rules for making that proffer. [Doc. 33, Ex. 1, and Doc. 39, Ex. 1] The October 18, 2004 letter is signed by AUSA Marsh, Attorney Moffatt, and the defendant. The defendant made the proffer on October 19, 2004.[1]

On February 1, 2005, Christopher Curry and Michael Boyd were indicted [Doc. 3] in the present case for conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine from June 2004 to October 2004. On April 19, 2005, a Superseding Indictment [Doc. 25] added the defendant as a coconspirator to the alleged cocaine conspiracy. On April 27, 2005, the

---

[1]This date is taken from the government's brief [Doc. 38] and was confirmed by defense counsel at the June 10 hearing.

government moved to dismiss the criminal complaint in case number 3:04-MJ-1069 without prejudice . This motion was granted in an April 29, 2005 order.

## II. ANALYSIS

At the June 10 hearing, the defendant argued that his October 19, 2004 proffer was immunized and that, therefore, the government bears the burden of showing that the evidence forming the basis for the Superseding Indictment as well as the evidence the government will introduce at trial was derived from legitimate, independent sources. He contended that the original criminal complaint alleged the amount of cocaine to be 500 grams and the Superseding Indictment alleges the amount of cocaine to be over five kilograms. He argued that his October 14, 2004 statement did not provide the government with the information to increase the amount of cocaine. Accordingly, he maintained that a Kastigar hearing is necessary (1) to determine the content of his October 14 statement and (2) to determine whether the Superseding Indictment is based upon information from his immunized proffer.

The government argued that the October 18, 2004 letter is a contract, which grants the defendant limited use immunity with regard to his proffer but expressly eliminates the need for a Kastigar hearing. It maintained that it properly made derivative use of the information in the defendant's proffer to indict Curry and Boyd. It asserts that it subsequently used information from Curry and Boyd as well as the defendant's October 14 statement to seek the Superseding Indictment against the defendant.

In Kastigar v. United States, the Supreme Court addressed the question of whether the government could compel a witness to testify, despite the witness's invocation of the Fifth

4

Amendment protection against self-incrimination, by granting the witness immunity from direct and derivative use of the witness's compelled testimony. 406 U.S. 441, 442 (1972). The witnesses, whose testimony was sought, argued that the scope of immunity granted by the federal witness immunity statute, 18 U.S.C. § 6002, was not the same as the protection of the Fifth Amendment. Id. at 448. The Court compared transactional[2] and use[3] immunity and concluded that use immunity, which is granted by the statute, is coextensive with Fifth Amendment protections. Id. at 453, 462.

In further examining the extent of the protection extended by use immunity, the Kastigar Court observed that once a witness shows that his or her testimony, made under a grant of use immunity, relates to a matter for which he or she is subsequently prosecuted, the government has the burden of showing that it "'had an independent, legitimate source for the disputed evidence.'" Kastigar, 406 U.S. at 460 (quoting Murphy v. Waterfront Com'n of New York Harbor, 378 U.S. 52, 79 n.18 (1964)). This "heavy" burden "is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." Id. at 460-61. Hearings at which the government must prove that its evidence comes from an independent source have come to be known as Kastigar hearings. See United States v. Turner, 936 F.2d 221, 224 (6th Cir. 1991). Such a hearing is what the defendant seeks in the present case.

---

[2]Transactional immunity "accords full immunity from prosecution for the offense to which the compelled testimony relates." Kastigar, 406 U.S. at 453. In other words, transactional immunity is an agreement not to prosecute the witness *at all* for any offense which is related to the immunized testimony.

[3]Use immunity relates to the government's inability to use the compelled testimony directly or indirectly (i.e., information derived from the testimony) as evidence against the witness. Kastigar, 406 U.S. at 453. In other words, use immunity is an agreement not to prosecute the witness with his or her *own testimony* or with information derived therefrom.

There is no evidence or contention that the present defendant was ever compelled to testify pursuant to a statutory grant of immunity like that at issue in Kastigar. Instead, the defendant points to the October 18, 2004 letter as his basis for contending that the government has violated a grant of immunity. The letter does not purport to provide any type of statutory immunity but, instead, merely contains the government's promises to the defendant with regard to the proffer. Informal or "'pocket immunity' . . . arises by way of assurances by prosecutors, either orally or by letter, to a potential grand jury witness that he will be immune from any prosecution based upon that testimony. Such decisions are made informally, outside the supervision of a court." Turner, 936 F.2d at 223. In contrast to formal, statutory immunity, informal immunity is "contractual in nature, and subject to contract law standards." United States v. Fitch, 964 F.2d 571, 574 (6th Cir. 1992); Turner, 936 F.2d at 223.

A court is not required to hold a Kastigar hearing when the grant of immunity is not formal, statutory immunity. Turner, 936 F.2d at 224; United States v. Brothers, 856 F. Supp. 380, 384 (M.D. Tenn. 1993); see also United States v. Orlando, 281 F.3d 586, 594 (6th Cir. 2002) (observing that the defendant "was not granted statutory immunity under 18 U.S.C. § 6002, so the protections that are provided to a witness who testifies pursuant to such immunity are not applicable"). Because the proffer by the defendant herein was neither compelled nor subject to a formal grant of statutory immunity, the Court finds that the defendant is not entitled to a formal Kastigar hearing. Accordingly, the Court recommends that the defendant's request for a Kastigar hearing [Doc. 33] be denied.

The Court finds that there was a grant of limited "use" immunity pursuant to the terms of the agreement contained in the October 18, 2004 letter. As such, the legal analysis will be made by

evaluating this matter under a contract law analysis. The conditions constituting a breach of an informal immunity agreement are determined by the terms of the agreement. Fitch, 964 F.2d at 574.

In the present case, the October 18, 2004 letter states in pertinent part:

> First, except as provided below, no statements or other information provided by your client during the proffer or discussion will be used as evidence against your client in any criminal case. See Fed. R. Crim. P. 11(e)(6).
>
> Second, the government may make derivative use of and may pursue any investigative leads suggested by statements or other information provided by your client. This provision is necessary in order to eliminate the necessity for a Kastigar hearing at which the government would have to prove that the evidence it would introduce at trial is not tainted by any statements or other information provided by your client during the proffer or discussion.

[Doc. 33, Ex. 1, Doc. 39, Ex. 1] Thus, the agreement expressly did not bar the government from making derivative use of the proffer, including pursuing any investigative leads suggested by the proffer. Moreover, the agreement specifically contemplates that the permissible derivative use of the proffer will prevent any future Kastigar hearing.

The defendant essentially contends that the government has breached the agreement by using his proffer as direct evidence before the grand jury to support his indictment for a conspiracy involving more than five kilograms of cocaine. He argues that before he gave the proffer, the government had brought a criminal complaint alleging a conspiracy involving 500 grams of cocaine. He argues that the support for the additional amount of cocaine over 500 grams came from his proffer. The government responds that it got the information forming the basis for the Superseding Indictment from the defendant's pre-proffer statement of October 14, 2004, and from information from Curry and Boyd, who agreed to cooperate against Mendizabal after they were indicted.

The Court finds that there is no evidence that the government has breached the agreement contained in the October 18, 2004 letter by indicting the defendant for a conspiracy involving five or more kilograms of cocaine. Support for the amount of cocaine alleged in the Superseding Indictment is found in the Report of Investigation [Doc. 38, Ex. 1], memorializing the defendant's October 14, 2004 statement. Agent Long notes that the defendant said that he began purchasing cocaine from Curry in July 2004 and bought one kilogram every week or two weeks. Using the more conservative estimate of one kilogram every two weeks from July 2004 to October 14, 2004, the Court finds that the defendant would have bought approximately seven kilograms of cocaine.[4] Thus, the amount of five kilograms or more of cocaine contained in the Superseding Indictment can be derived from the defendant's own pre-proffer statement.

At the June 10 hearing, the defendant pointed out that Agent Long's report is dated October 21, 2004, which is after both the October 14 interview and the October 19 proffer. He argued that the Court should hold a hearing to determine whether there are any notes or tapes of what the defendant said on October 14. The Court observes that it has already ordered the government to disclose to the defendant

> [a]ny relevant written or recorded statements made by the defendant, and that portion of any written record (including rough notes) containing the substance of any relevant oral statement made by the defendant before or after arrest in response to interrogation by any person then known to the defendant as a government agent.

[Doc. 10, Order on Discovery and Scheduling, para. A(1)] The original discovery deadline in this case was March 25, 2005, and the Order on Discovery and Scheduling became applicable to

---

[4]The Court takes judicial notice of the fact that there are fifteen weeks between July 1, 2004, and October 14, 2004.

8

Mendizabal upon his entry into the case over a month later. In other words, if any recording or rough notes of the October 14, 2004 interview existed, the defendant should have long had it in discovery. Based upon the evidence in the record, which consists of Agent Long's report of the defendant's October 14, 2004 statement, the Court finds that the government has not breached the agreement contained in the October 18, 2004 letter with regard to the amount of cocaine in the Superseding Indictment.

Moreover, the Court has reviewed the grand jury transcript [Doc. 40], which was filed by the government under seal. The Court finds that none of the testimony before the grand jury constitutes a material breach of the agreement contained in the October 18, 2004 letter. The Court notes that one piece of information presented to the grand jury could have possibly come from the defendant's proffer, because it is not referenced in the report of the defendant's October 14, 2004 statement and is unlikely to have been provided by the codefendants. Nevertheless, as discussed more fully in the Supplemental Report and Recommendation filed under seal, the Court finds that this piece of information was not material to the charges against the defendant and, therefore, if it did come from the proffer, is not a material breach of the October 18 agreement. Accordingly, the Court also recommends that the defendant's alternative request [Doc. 33] for the dismissal of the indictment be denied.

## **CONCLUSION**

After carefully considering all the pleadings, including supplemental filings, exhibits, and the evidence introduced and arguments made during the course of the hearing, and after reviewing the relevant legal authorities, it is clear to the undersigned that there is no basis for holding a <u>Kastigar</u> hearing or for dismissing the indictment in this case. For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion [Doc. 33] be **DENIED**.[5]

                                        Respectfully submitted,

                                            s/ H. Bruce Guyton
                                      United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be filed with the clerk of the court within ten (10) days of receipt of this notice. Such objections must conform to the requirements of Rule 72(b), Fed. R. Civ. P. Failure to file objections within the specified time waives the right to appeal the district court's order. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. <u>Mira v. Marshall</u>, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. <u>Smith v. Detroit Federation of Teachers</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).