IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 3:05-CR-10 |
| | ) | |
| JOVAN MENDIZABAL | ) | |


**MEMORANDUM AND ORDER**

This criminal case is before the court on the objections of defendant Jovan Mendizabal to the magistrate judge's report and recommendation [doc. 54]. The magistrate judge recommended that the defendant's motions to suppress evidence be denied. The government has responded, relying upon its earlier pleadings [doc. 56], and the objections are ripe for the court's consideration. A transcript of the suppression hearing has been prepared [doc. 57]. For the reasons discussed below, the defendant's objections will be overruled.

Under 28 U.S.C. § 636(b), a *de novo* review by the district court of a magistrate judge's report and recommendation is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28

U.S.C. § 636(b); *see also United States v. Campbell*, 261 F.3d 628, 631-32 (6th Cir. 2001).

In his motions to suppress evidence the defendant raised two issues: whether there was sufficient probable cause to support the issuance of the search warrant for his house and whether the officers executing the search warrant complied with federal "knock and announce" requirements. The magistrate judge found that there was sufficient probable cause in the affidavit attached to the search warrant to support its issuance and, even if it was lacking in probable cause, the officers were entitled to rely on the search warrant in good faith. On the "knock and announce" issue, the magistrate judge found that there was no constitutional violation in the execution of the search warrant, in that the officers executing the search warrant acted reasonably when they knocked and announced, waited about ten seconds, and then used a ram to break down the door.

**A. Search Warrant**

In his objections, the defendant argues that the search warrant failed to "make any connection between the residence to be searched and the facts of criminal activity that the officer set out in his affidavit." The defendant says that there is no evidence that any criminal activity took place at his house, and the absence of such evidence makes the search warrant infirm.

2

Contrary to the defendant's assertion, in order for a nexus to be established between criminal activity and a place to be searched, it is not necessary that there be averments that criminal activity itself occurred at the place. Rather, to justify a search, the affidavit must only demonstrate that evidence of illegal activity will be found in a particular place. *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.), *cert. denied*, 125 S.Ct. 591 (2004). In this case, the search warrant sought evidence of Mendizabal's cocaine dealing; specifically, "receipts, correspondence, ledgers, telephone books and other papers" and other similar evidence. The affiant stated that, based on his experience, items of this type are often kept at a suspected dealer's residence, particularly when there is evidence that the dealer is owed money for drugs.

The affidavit in this case furnishes information that a confidential source told the affiant that the source had been purchasing cocaine from defendant Mendizabal for about six months. During a recorded conversation between Mendizabal and the confidential source, it was learned that Mendizabal had "fronted" cocaine to a particular individual who owed him a large amount of money. Mendizabal also said he was owed about $20,000 for cocaine that he had fronted to various dealers. The affiant also testified that the confidential source traveled to Mendizabal's house to discuss a drug deal. The source was equipped with a recording device, and the affiant heard Mendizabal discuss his cocaine business, including the fact that he had fronted multiple ounces of

3

cocaine to a dealer who still owed him money.  Mendizabal bragged that he had made enough money from the sale of cocaine to retire.  Also, a drug sale between Mendizabal and the confidential source in a restaurant parking lot was observed and recorded.

This court finds, as did the magistrate judge that there was a sufficient nexus between the place to be searched, Mendizabal's house, and his drug activity.  Further, the court also agrees with the magistrate judge that, in any event, the officers were entitled to rely on the search warrant under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).  The defendant's objection on this issue will be overruled.

### B.  Knock and Announce

The defendant also objects to the magistrate judge's conclusion that the execution of the search warrant was lawful.  The defendant says that the magistrate judge did not consider all the factors that were relevant on this issue.  The defendant says that the officers knew he was not at home because he just been arrested at a drug deal right before the warrant was executed, and the officers had no information that any of Mendizabal's roommates had weapons, were in the drug business, or knew where firearms and/or drugs might be located in the house.  Thus, he argues that none of the exigencies that allow a quick entry after the knock and announce are present in this case.

4

The federal knock and announce rule is designed to protect important interests; that is, to reduce the potential for violence to police officers and residents; to control the destruction of private property; and to protect a person's right to privacy in his house. *See United States v. Dice*, 200 F.3d 978, 982 (6th Cir. 2000). Not only must the officers knock and announce their purpose before entering, they must wait a "reasonable" period of time before physically forcing their way into the home. *Id.* at 983. Whether the delay is reasonable depends on the time of day and other circumstances known to the officers, such as whether they know if individuals are in the home and whether they know or believe that contraband or firearms are present. *See United States v. McCraven*, 401 F.3d 693, 699 (6th Cir. 2005).

In this case, the magistrate judge credited the officer's testimony that they knocked three times on the door and announced who they were and their purpose. The magistrate judge also found that the ten seconds or so that the officers then waited before hitting the door with their ram was not unreasonable given that it was the middle of the afternoon; that the officers knew that there might be persons in the house (cars in the driveway); that they knew from the confidential source that there were weapons in the house; and that there might be contraband (cocaine) in the house. The magistrate judge specifically noted that the officers had to hit the door five times with the ram before they were able to gain access, and this took almost a minute.

5

For the reasons stated in the report and recommendation, the court agrees with the magistrate judge's findings and conclusion. For the same reasons the defendant objects to the "quick" entry, the officers were justified in waiting just ten seconds before using the ram. The officers did not have sufficient knowledge about Mendizabal's roommates to determine whether they also had weapons or drugs, or whether they knew where Mendizabal kept his.[1] This court finds that the knock and announce procedure used in this case was not unlawful, and the defendant's objections on this issue will be overruled.

Based on the court's review of the pleadings, the report and recommendation and the transcript, the court **ADOPTS** the magistrate judge's report and recommendation in its entirety. It is hereby **ORDERED** that the defendant's objections to the report and recommendation [doc. 54] are **OVERRULED**, and the defendant's motions to suppress evidence [docs. 34 and 36] are **DENIED.**

ENTER:

    *s/ Leon Jordan*
United States District Judge

---

[1] In fact, one of Mendizabal's roommates testified at the suppression hearing that he was in his bedroom with his girlfriend when he heard three loud bangs and then the officers were in the house. The loud bangs he heard were likely the last three efforts to break down the door with the ram. He evidently missed the knocks, the announcement, and the first two hits on the door with the ram.

6