UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JOVAN MENDIZABAL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos: 3:05-cr-010 |
| | ) | 3:07-cv-256 |
| | ) | *Jordan* |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM**

This is a *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Jovan Mendizabal ("petitioner"). The government has filed its response to the § 2255 motion and petitioner has filed a motion for summary judgment. The petitioner's motion for summary judgment will be **DENIED**. For the following reasons, the § 2255 motion will be **DENIED** and this action will be **DISMISSED**.

I.  Standard of Review

This Court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process."

*United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.     Factual Background

Petitioner was convicted by a jury of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. §§ 846, 841(a) & (b)(1)(A), and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A). He was sentenced to consecutive statutory mandatory minimum sentences of 120 months and 60 months, respectively, for a total term of imprisonment of 180 months. The convictions and sentence were affirmed on direct appeal. *United States v. Mendizabal*, 214 F. App'x 496 (6th Cir. Dec. 20, 2006).

The Sixth Circuit summarized the facts underlying petitioner's convictions as follows:

> Federal agents sought a search warrant for Jovan Mendizabal's residence in Knoxville, Tennessee. Drug Enforcement Agency (DEA) Agent Don White testified before the magistrate judge that information provided by a confidential source supported the warrant. Agent White had a history with this source, and the source claimed to have been inside Mendizabal's residence.

DEA Agent Mike Long also provided a six-page affidavit supporting issuance of the warrant, in which he stated that his training and seventeen years of experience had taught him that "drug traffickers maintain books, records, receipts, notes, ledgers, and other papers," which are "commonly maintained where drug traffickers have ready access to them, i.e. homes...." The affidavit states that a confidential source told Agent Long that he purchased cocaine from Mendizabal on a weekly basis and that Mendizabal claimed people owed him about $20,000 from his cocaine sales. The affidavit also states that on October 1, 2004, the source went to Mendizabal's home to arrange future cocaine purchases. The source was wearing a recording device that allowed Agent Long to overhear Mendizabal discuss his cocaine business. Several days later, the source met with Mendizabal in a parking lot and purchased three ounces of cocaine, for which he paid $2,700 in marked bills. The magistrate judge issued the warrant.

Before officers executed the search warrant, Agent Long conducted a controlled purchase at the Knoxville Center Mall and arrested Mendizabal. Officers confiscated about 250 grams of cocaine from Mendizabal's vehicle. Agent Long and another officer interviewed him, and according to Agent Long's notes, Mendizabal admitted to selling ten customers cocaine in four-and-one-half-ounce quantities or less.

Agent White waited until Mendizabal was in custody before executing the search warrant. Agent White knocked three times at Mendizabal's front door and announced the officers' presence. When there was no response after about ten seconds, the officers hit the front door with a ram. Eventually, a door panel popped out and Agent White was able to reach in, unlock the door, and go inside. This entry took about forty-five seconds to one minute. During the search, officers seized cocaine and a Smith & Wesson Walther P22 handgun from a safe.

The following day, authorities charged Mendizabal with conspiracy to distribute or possess with intent to distribute 500 grams or more of cocaine. Mendizabal made a proffer, and authorities used this information to charge Chris Curry and Mike Boyd with conspiracy to distribute or possess with intent to distribute five kilograms or more of cocaine. Authorities then filed a Superseding Indictment against Mendizabal charging five kilograms of cocaine (an increase from the original charge of 500 grams or more). The Superseding Indictment also charged Mendizabal with possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

3

*Id*. at 497-98. In support of his § 2255 motion, petitioner alleges he received the ineffective assistance of counsel.

III.   Discussion

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

4

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Petitioner alleges five specific instances of ineffective assistance of counsel. The Court will consider each claim in turn.

> **1. Counsel failed to move to suppress petitioner's post-arrest statement on the grounds that it violated petitioner's *Miranda* rights and was the result of coercion.**

Petitioner alleges that, after his arrest and while he was sitting in the back of the police cruiser, an agent read his rights to him. Thereafter, the agent and another agent had separate conversations with him in which they discussed the benefits of cooperation. Petitioner alleges that he told the agents he wanted to speak to a lawyer first and was told he would get one when he went to court. He claims he was also told that the agents had a choice of charging him in either state or federal court, and that if he cooperated he would be charged in state court. Petitioner alleges that after several hours, he was moved to a DEA office where two different agents, one of whom was Mike Long, questioned him without reading him his rights. He claims he answered some of the questions in an effort to avoid federal prosecution, but then stopped and said he did not want to answer more questions without a lawyer. Petitioner alleges that Agent Long then became agitated, and he, petitioner,

5

continued to answer questions, thinking that if he did he would be charged in state court. According to petitioner, his statement was used against him at trial.

Agent Long testified at trial that he was a task force agent with the Drug Enforcement Administration (DEA) and that he participated in a controlled cocaine purchase from petitioner on October 14, 2004. [Criminal Action No. 3:05-cr-10, Court File No. 83, Transcript of Trial, pp. 66, 68-69]. After petitioner's arrest, Agent Long interviewed him at the DEA office. Agent Long testified that petitioner was read his *Miranda* rights and that petitioner stated he had approximately ten customers who bought cocaine from him. [*Id.* at 72]. Petitioner also told Agent Long who he bought cocaine from and that he had purchased one to two kilos per week for several months prior to his arrest. [*Id.* at 73-74].

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions against the accused. *Jackson v. Denno*, 378 U.S. 368, 376 (1964). A confession is considered involuntary if 1) the police extorted the confession by means of coercive activity, 2) the coercion in question was sufficient to overbear the will of the accused, and 3) the will of the accused was in fact overborne because of the coercive police activity in question. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir.1988). To determine whether an accuser's confession is involuntary, a totality-of-the-circumstances test is employed. *Withrow v. Williams*, 507 U.S. 680, 688-89. Factors to weigh include the age, education, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. *See Arizona v. Fulminante*, 499 U.S. 279, 286 (1991); *Schneckloth v.*

6

*Bustamonte*, 412 U.S. 218, 226 (1973). In *United States v. Ostrander*, 411 F.3d 684 (6th Cir. 2005), the Sixth Circuit held that the court's focus is on the "voluntariness of the confession" and reiterated the aforementioned elements of an involuntary confession and the factors to be considered. *Id*. at 696.

Petitioner admits that he was given his *Miranda* warnings at the time of his arrest and that he voluntarily waived his right to remain silent. There is nothing in the record, other than petitioner's self-serving statement, to suggest that his confession was coerced or otherwise was not voluntary. The fact that petitioner talked to the agents in the belief that he would not be prosecuted in federal court but only in state court does not, without more, mean that his statements were coerced. *See United States v. Williams*, 215 F. App'x 453, 454-55 (6th Cir. 2007) (defendant's belief that she would not be prosecuted if she confessed did not make the confession subject to suppression). Accordingly, there was no basis for counsel to file a motion to suppress and counsel was not ineffective in failing to do so. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (the failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel).

   **2.  Counsel failed to actively defend against the § 924(c) charge.**

Petitioner alleges that his attorney failed to present evidence to the jury that would have caused them to acquit him. He alleges that several witnesses as well as documentation would have shown that he purchased the firearm legally, which he claims was of very small caliber, for use by any female friends who accompanied him target shooting. According to

7

Case 3:05-cr-00010 Document 109 Filed 10/17/11 Page 7 of 14 PageID #: 132

petitioner, this evidence would have caused reasonable doubt that the firearm was used to promote the drug conspiracy.

Agent Donald W. White testified that a search of the safe at petitioner's residence yielded cocaine along with a loaded Smith & Wesson Walther P-22 semi-automatic pistol. [Criminal Action No. 3:05-cr-10, Court File No. 83, Transcript of Trial, p. 84]. Agent White further testified that, in the case of drug traffickers, it was usual to find weapons and drugs together. [*Id*. at 84-85].

The fact that petitioner may have purchased the pistol legally or that he may have used the pistol for legitimate purposes is immaterial under § 924(c). *See, e.g., United States v. Warwick*, 167 F.3d 965, 972 (6th Cir. 1999) (evidence that the defendant might have carried firearms for sale or display "does not preclude a finding that the firearms also were intended to facilitate the marijuana sales"); *United States v. Brown*, 915 F.2d 219, 226 (6th Cir. 1990) (to support a § 924(c) conviction, the government is not required to prove that the defendant's sole purpose was to facilitate the drug crime); *see also United States v. Payne*, 173 F. App'x 429, 432 (6th Cir. 2006) (the fact that the defendant "possessed the guns both for hunting and in furtherance of his drug trafficking crimes" was immaterial to his conviction under § 924(c)).

As the court in *Payne* pointed out, "the claim of using the guns or any of them for target shooting is eroded by evidence that both handguns were loaded. A target shooter is unlikely to keep his target guns loaded and ready for use while the guns are in the home." *Id*. Because evidence that petitioner purchased the pistol legally or that he used it for target

8

shooting would not have been a defense to the § 924(c) charge, counsel was not ineffective in failing to present such evidence.

    **3.    Counsel failed to object to the unreliable testimony of Agent Don White and failed to object to a jury instruction that bolstered Agent White's testimony.**

Petitioner alleges that Agent White testified that cocaine was found in the safe along with a firearm, but that Agent White later admitted that he was not there when the safe was opened by other agents. Therefore, Agent White could not have testified from personal knowledge as to what was in the safe when it was opened. Petitioner also alleges that Agent White testified that the substance found in the safe was cocaine, although discovery documents received by the defendant indicated that none of the substances found at petitioner's residence were submitted to a laboratory for testing. Finally, petitioner claims that counsel should have objected to the instruction to the jury that they must accept as a proven fact what the nature of the substances were, since the parties had stipulated it was cocaine. According to petitioner, he only stipulated to the substance that was seized at the mall.

Petitioner's co-defendant Christopher Curry testified at trial that in August 2004, he began delivering cocaine to petitioner. [Criminal Action No. 3:05-cr-10, Court File No. 83, Transcript of Trial, pp. 19-24]. He estimated that he delivered a total of seven and one-half kilograms to petitioner, most of it to petitioner's residence. [*Id.* at 24]. Dustin Doane testified that between December 2003 and January 2004 he began selling cocaine to petitioner and then, sometime around Father's Day in 2004, he began buying cocaine from

9

petitioner. [*Id*. at 43-44]. He further testified that he was generally at petitioner's residence when Christopher Curry delivered the cocaine and that, after the cocaine was weighed, it was either put into the safe or buried or distributed. [*Id*. at 46-47]. Mr. Doane described the safe in petitioner's bedroom and stated that he had seen drugs and guns in the safe many times. [*Id*. at 49-50]. Under these circumstances, petitioner was not prejudiced by counsel's failure to object to Agent White's testimony or the fact that the substance found in the safe was not tested in a laboratory.

The government agrees that the parties stipulated only that the substance in petitioner's possession at the time of his arrest was cocaine. The government further agrees that the Court erred in charging the jury that the substance involved in the conspiracy was cocaine. The government contends, however, the error was harmless beyond a reasonable doubt. The Court agrees. Had counsel objected to the jury instruction regarding the stipulation, the remedy would have been to instruct the jury that it must determine whether the substance in the safe was cocaine. Based upon the evidence, there could not have been any doubt on that issue. Thus, petitioner was not prejudiced by counsel's failure to object to the jury instruction.

    **4.**    **Counsel failed to obtain the rough notes of Agent Mike Long as well as the transcripts of Agent Long's grand jury testimony.**

Petitioner alleges that his attorney failed to obtain Agent Mike Long's rough notes of his post-arrest interrogation of petitioner and failed to obtain the transcripts of Agent Long's grand jury testimony, thus preventing an effective cross-examination. According to

10

Case 3:05-cr-00010   Document 109   Filed 10/17/11   Page 10 of 14   PageID #: 135

petitioner, there was a dispute as to what he said on the day of his arrest. Petitioner also alleges that the prosecution violated the rules of discovery and the Jencks Act by not turning over the rough notes and transcripts. Petitioner alleges that the magistrate judge had noted that if any rough notes existed, they should have been turned over to the defense. Petitioner claims, however, that it was not until trial that the defense learned any rough notes existed. He also alleges that counsel was ineffective in failing to raise on appeal the denial of the motion for production of the rough notes.

The government filed, as an exhibit to its response to petitioner's pretrial motions, Agent Long's summary of his interview with petitioner on October 14, 2004; the summary noted that it was prepared on October 20, 2004. [Criminal Action No. 3:05-cr-10, Court File No. 38, Exhibit 1, Report of Investigation]. At trial, counsel asked Agent Long on cross-examination whether he took notes during the October 14 interview and Agent Long stated he was sure he did. [*Id.*, Court File No. 83, Transcript of Trial, pp. 75-76]. Agent Long was asked to produce his notes of the meeting and he stated that he did not have them with him. Counsel then used Agent Long's failure to produce the rough notes to impeach the witness and raise doubts about his memory of the interview, especially since Agent Long admitted that he had not reviewed his notes prior to trial and had only reviewed the report which was prepared six days later. [*Id.* at 76-79].

At the conclusion of the government's proof, counsel moved to dismiss the conspiracy charge based upon the government's failure to provide the defense with copies of the rough notes. [*Id.* at 90]. The court ruled that the agent's report was made available to the defense,

11

that the defense had ample opportunity to ask for the rough notes if they wanted them, and that the defense had waived any interest in the rough notes. [*Id.* at 92].

There is nothing to suggest that the rough notes were exculpatory or would have contradicted the testimony of Christopher Curry or Dustin Doane, which established that petitioner was trafficking in large quantities of cocaine. The only value of the rough notes was to impeach Agent Long and defense counsel in fact made use of the government's failure to provide the rough notes during the cross-examination of Agent Long for impeachment purposes. Under these circumstances, petitioner has not demonstrated that he was prejudiced by counsel's failure to obtain the rough notes. The same would hold true as to counsel's failure to obtain the transcript of Agent Long's grand jury testimony.

With respect to petitioner's claim that counsel should have raised the issue of the rough notes on direct appeal, a defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). However, a defendant does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Id.* Thus, appellate counsel's decision as to what issues should be raised on appeal cannot generally constitute ineffective assistance of counsel. *See, e.g. McMeans v. Brigano*, 228 F.3d 674, 682 (2000) ("Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation."); *Wright v. United States*, 182 F.3d 458, 466

12

(1999) ("Appellate counsel is not ineffective simply because he or she decides not to raise every possible argument on appeal.")

This Court cannot say that appellate counsel erred in his decision to not pursue the issue of the rough notes on appeal. "A brief that raises every colorable issue runs the risk of burying good arguments." *Jones v. Barnes*, 463 U.S. at 753. Accordingly, petitioner has failed to demonstrate ineffective assistance of counsel under the *Strickland* standard in this regard.

> **5.    Counsel failed to move for dismissal of the conspiracy count as a violation of the Speedy Trial Act.**

Petitioner alleges that he was arrested on October 14, 2004, and that, although a federal complaint was filed the next day, the indictment was not filed until April 19, 2005. Petitioner is correct that he was arrested on October 14, 2004, and a complaint against him was filed on October 15, 2004, charging him with conspiracy to distribute 500 grams or more of cocaine; the case was dismissed on motion of the government on April 27, 2005. *United States v. Mendizabal*, Criminal Action No. 3:04-mj-01069 (E.D. Tenn. April 17, 2005) (order of dismissal). In the meantime, the grand jury on February 1, 2005, indicted Christopher Allen Curry and Michael Vincent Boyd for conspiracy to distribute five kilograms or more of cocaine. [Criminal Action No. 3:05-cr-10, Court File No. 3, Indictment]. On April 19, 2005, the grand jury returned a superseding indictment adding petitioner to the conspiracy charge as well as charging him with possessing a firearm in furtherance of the conspiracy. [*Id.*, Court File No. 25, Superseding Indictment].

13

Because the original complaint was dismissed and petitioner was prosecuted under a broader conspiracy indictment, there was no violation of the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq*. *See United States v. Gaskin*, 364 F.3d 438, 452-53 (2d Cir. 2004) (a conspiracy charge in a complaint and a charge of larger conspiracy in a subsequent indictment, wholly encompassing the conspiracy alleged in the complaint, are not the same charges for purposes of the Speedy Trial Act). Accordingly, counsel was not ineffective for failing to make a frivolous motion to dismiss the conspiracy count.

IV. Conclusion

Petitioner has failed to demonstrate that he received the ineffective assistance of counsel under the *Strickland* standard. He is not entitled to relief under § 2255, his motion for summary judgment will be **DENIED**, and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. In addition to the above, this Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed in forma pauperis on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Leon Jordan
United States District Judge